Mr. Jay E. Reasoner, CPA Principal State Auditor Office of State Auditor Room 601, 1200 Lincoln Street Denver, CO 80203
Dear Mr. Reasoner:
QUESTIONS PRESENTED AND CONCLUSIONS
In your June 21, 1979 letter you requested opinions concerning six problems related to your audit of the Department of Labor and Employment for the fiscal year ended June 30, 1978. The questions posed are restated here and will be addressed in turn:
1. Interpretation of title 24-37-103(c) as to the authority for State Planning and Budgeting to engage in this type of lease agreement.
 In my opinion, State Planning and Budgeting had authority to engage in this type of lease agreement.
2. Was the creation of the Department of Labor and Employment enterprise fund by the Department of Labor and Employment and/or the state controller proper?
My conclusion is "yes."
3. What authority and documentation should the state controller require before establishing an entity (enterprise fund)? If established without authority, who is liable?
 The only requirement for the establishment of an enterprise fund, as noted above, is the prior approval of Accounts and Control. Any required demonstration of authority and documentation would be within the controller's administrative discretion, and to date no such requirements have been imposed by the Fiscal Rules or the Fiscal Procedures Manual.
Since the fund in this case was properly established, this contingent issue of liability need not be addressed at this time.
4. Does the annual lease comply with the existing statutes?
 The lease agreement of September 1, 1978, was found to comply with existing statutes regarding lease agreements. The necessary requirements for lease agreements between state departments or agencies and private, or non-state entities, as well as for lease agreements between state agencies or departments and other state agencies or departments are found in the Fiscal Rules, chapter 3, section 1.31 and 1.32. The only deviation from the rule found here was the omission of the clause, "Financial obligations of the State of Colorado payable after the current fiscal year are contingent upon funds for that purpose being appropriated, budgeted or otherwise made available. . .," which was determined to be inconsequential as the agreement required the actual payment of only nominal
consideration from the Department of Labor and Employment to the Office of State Planning and Budgeting. Otherwise, the lease agreement generally met fiscal rule requirements and was approved by the attorney general and the state controller, as well as by the Division of State Buildings which was the agency of the Office of State Planning and Budgeting responsible for the leasing of state ". . . land, buildings, office or other spaces."
5. Is it proper for the Department of Labor and Employment to sublease to private agencies?
 The lease provides that the lessee (Department of Labor and Employment) at its sole discretion may sublease any or all of the leased premises subject and subordinate to the terms and conditions of the lease. Any sublease is, of course, subject to the Fiscal Rules as related to lease agreements. Neither the statutes nor the Fiscal Rules restrict the authority of a department or agency as a lessee, to sublease, provided the lease agreement itself permits such a transaction.
Further, the Governor, in an Executive Order dated November 1, 1977, transferred to the Office of the Executive Director, Department of Labor and Employment, the CETA special Grant Program to the Governor, and delegated to the Executive Director of the Department of Labor and Employment his authority to utilize CETA title I funds for contracting and the responsibility for all grants and agreements executed pursuant to title I, section 107 of the (CETA) Act. The department, accordingly, could here undertake the management of the leased premises to assure the accomplishment of the purposes of the special training and employment program as delegated to it. If the said special training and employment programs included the utilization of private agencies, then a sublease to such a private agency would certainly fall within the purview of the authority.
6. What would be the overall effect of lease agreement if the leases assigned to lessee (page 3) were nonexistent, or nonenforceable?
 If the leases assigned the lessee, page three, exhibit 1, were nonexistent, or nonenforceable, the lease agreement nevertheless would remain valid and enforceable against the lessee. The agreement does not make the assignment of the "subleases" a condition precedent to lessee's performance. Rather, it is more as a part listing in the recital of the total consideration to which the lessee shall become entitled, and can be more properly defined as one of several mutual promises by the lessor. The lease agreement does not provide a remedy to the lessee should the lessor fail or refuse to perform the agreed upon assignment, indicating the parties did not believe a failure to carry out the duty occasioned by the promise was such that the agreement should be terminated, nor an immediate breach declared. Any dispute or controversy arising from such a partial failure to perform by the lessor could readily have been measured monetarily and any damages determined. Should the dispute or controversy prove irresolvable then proper disposition would be possible through the intercession of the Governor, as in other interagency disputes or controversies. (See C.R.S. 1973, 24-1-104).
ANALYSIS
C.R.S. 1973, 24-37-103(c) conferred broad general discretionary power upon the Office of State Planning and Budgeting to "negotiate and execute leases on behalf of the State Government on land, buildings and office or other spaces." The only qualification imposed was that ". . . consultation be first had with the Department of Administration." The statute required only consultation with that department, notapproval. There is no other impediment to this type of lease agreement. The fiscal rules promulgated by the state controller, director of the Division of Accounts and Controls of the Department of Administration, provide for contract (lease) procedural requirements and all necessary approval signatures (see Fiscal Rules 3.1.32.03). Execution by the controller of the September 1, 1978, lease agreement between the Office of State Planning and Budgeting and the Department of Labor and Employment confirms the acceptance of the Department of Administration of the negotiated lease agreement between the parties.
The enterprise fund in question was created following the controller's suggestion dated April 24, 1978.
The controller has the powers and duty to manage the finances and financial affairs of the state pursuant to C.R.S. 1973,24-30-201(1)(e), and to promulgate fiscal rules in order to provide procedures to carry out his statutory duties, C.R.S. 1973,24-30-202(13). Rule 1.41.05 in chapter 5 of the State of Colorado Fiscal Rules recognizes enterprise funds as one type of fund to be used in accounting for governmental financial operations.
 Enterprise funds are established to account for the financing of self-supporting activities of governmental units. . .
See the National Committee on Governmental Accounting's publication Governmental Accounting, Auditing and FinancialReporting (1968) at 51, referenced in rule 1.40.01, chapter 5 of the Fiscal Rules.
In 1976, Lloyd Speulda of the Department of Administration drafted a compendium on the use of the word "fund," in which he defines enterprise funds (which are not statutorily defined) as:
 funds established to finance and account for operation and maintenance of facilities and services which are predominantly or entirely self-supporting. In the central accounting system these operations are accounted for in the 5100 fund series.
The Fiscal Procedures Manual (issued July 1, 1977) provides for the use of enterprise funds for the financing of services to users where all or most of the costs are paid in the form of charges to the users of such services. See chapter 2, section 2, page 1.03. The establishment of new funds must be approved by Accounts and Control, see Procedures Manual, chapter 2, section 2, page 1.05.
Based upon the above referenced authority, the controller properly established the Labor and Employment Enterprise Fund.
A corollary issue is whether the Department of Labor and Employment may properly operate such an enterprise fund.
In April 1978, when the fund was created, the Comprehensive Employment and Training Act of 1973 (CETA) provided funds for comprehensive manpower services to prime sponsors including the states. / Title I, section 102(a)(1) /. Four percent of the CETA title I funds are allocated to the states / title I, section 103(e) /, and these funds may be used inter alia, for "carrying out special model training and employment programs and related services. . ." / title I, section 106(c)(5) /.
These and other state prime sponsor CETA funds are channeled through the Governor's Special Grants Program (now Office of Manpower Planning and Development) and the Balance of State CETA Program which were within the Governor's office and the Division of Employment and Training, but which have since been transferred to the Department of Labor and Employment, Office of the Executive Director, pursuant to the attached Executive Orders dated February 22, 1979.
The facility at 62nd and Downing is currently housing several state agency activities as well as model CETA training programs. Since the Governor may properly utilize CETA funds for such training purposes, and since that function has been properly delegated to the executive director of the Department of Labor and Employment, it is clear that proper authority exists to operate the enterprise fund in question.
Although existing statutes do not speak to the amount of consideration determined to be adequate for the leasing of state ". . . land, buildings, and office or other space. . ." the Division of State Buildings has routinely inquired as to the going rental rates, or lease rates for ". . . land, buildings, and office or other space . . ." comparably situated and insisted that state rates remain competitive within the "market."
The annual lease consideration agreed upon here between OSPB and the Department of Labor and Employment was the "payment of all utilities and the provision of security and janitorial services for the entire (former) "Campus"; payment of past due utility bills (up to $3,000); and, in addition, the cost of all repairs, refurbishing and remodelling already expended or required to be expended by Labor and Employment in order to restore the buildings to habitable condition for use by Labor and Employment or by subtenants to the extent funds were already available, or could be made available through possible supplemental budget requested by either OSPB or Labor and Employment, or by both. As there are no limitations or restrictions imposed by existing statutes as to the amount of consideration necessary to enable state agencies to enter into lease agreements with either other state agencies or with non-state entities, the consideration agreed upon between OSPB and the Department of Labor and Employment was determined by the State Buildings Division to be adequate, especially when the special circumstances surrounding the agreement were taken into account. OSPB was denied supplemental funds by the legislature. Previously maintenance, security, remodeling and other administrative funds necessary to maintain proper safeguarding and protection of the property, as well as the necessity for preserving its tenantable condition had not been appropriated by the legislature. The lease agreement with Labor and Employment insured the continuing existence and maintenance of all buildings including regular security and janitorial services, and the payment of all utilities.
SUMMARY
To briefly summarize my opinion, State Planning and Budgeting had authority to engage in the lease agreement in question. The creation of the Department of Labor and Employment enterprise fund was proper, and was approved by Accounts and Control, as required. The annual lease generally complied with existing statutes and any sublease agreement by the Department of Labor and Employment was proper. If such sublease agreement were to be invalid, the lease agreement would remain valid and enforceable.
Very truly yours,
 J.D. MacFARLANE Attorney General
PUBLIC BUILDINGS CONTRACTS PUBLIC FUNDS PROPERTY, STATE STATE GOVERNMENT
C.R.S. 1973, 24-37-103(c) C.R.S. 1973, 24-30-201(1)(e) C.R.S. 1973, 24-30-202(13)
LABOR EMPLOYMENT DEPT. LEGISLATIVE BRANCH Auditor, Office of State
1. OSPB in accordance with 24-37-103(c) (now Department of Administration under 24-30-1301(1)(a)) had authority to lease state buildings and land for consideration other than money (maintenance, utilities, repairs and remodeling) to another state agency.
2. State controller by authority of 24-30-201(1)(e) and by fiscal rules promulgated under 24-30-202(13) may approve the establishment of enterprise funds by state departments.
3. A state agency as lessee of a building or land from another state agency may, if the lease so provides, sublease all or a portion of the leased premises to another state agency or to any other legal entity. Such a sublease is subject to the fiscal rule requirements for state leases.